Arthur **STEIN, Edwin Humphries, David Bailey, and Robert Maccini, on behalf of the Employee Investment Plan of Stone & Webster Incorporated and Participating Subsidiaries, and on behalf of its participants, and on behalf of the Employee Stock Ownership Plan of Stone & Webster Incorporated and Participating Subsidiaries, and on behalf of its participants, Plaintiffs,**

v.

**H. Kerner SMITH, Donna R. Bethell, J. Angus McKee, David N. McKammon, Edward J. Walsh, Peter M. Wood, Peter Evans and Gerald Halpin III, Defendants.**

No. CIV.A.01–10500–RCL.

United States District Court, D. Massachusetts.

July 3, 2003.

Anita B. Bapooji, Testa, Hurwitz & Thibeault, LLP, Boston, Attorney to Be Noticed representing H. Kerner Smith.

(Defendant) Richard D. Batchelder, Jr., Ropes & Gray LLP, Boston, Attorney to Be Noticed representing David N. McCammon.

(Defendant) Donna R. Bethell, (Defendant) Edward J. Walsh, (Defendant) Peter M. Evans, (Defendant) Peter M. Wood, Attorney to Be Noticed representing J. Angus McKee.

(Defendant) Michelle H. Blauner, Shapiro, Haber & Urmy, Boston, Attorney to Be Noticed representing Arthur Stein.

(Plaintiff) David Bailey, (Plaintiff) Edwin Humphries, (Plaintiff) Robert Maccini, (Plaintiff) John D. Donovan, Jr., Ropes & Gray LLP, Boston, Attorney to Be Noticed representing David N. McCammon.

(Defendant) Donna R. Bethell, (Defendant) Edward J. Walsh, (Defendant) Gerald Halpin, III, (Defendant) J. Angus McKee, (Defendant) Peter M. Evans, (Defendant) Peter M. Wood, (Defendant) Inez H. Friedman–Boyce, Testa, Hurwitz & Thibeault, LLP, Boston, Attorney to Be Noticed representing H. Kerner Smith.

(Defendant) Jordan D. Hershman, Testa, Hurwitz & Thibeault, LLP, Boston, Attorney to Be Noticed representing H. Kerner Smith.

(Defendant) Todd S. Heyman, Shapiro, Haber & Urmy, LLP, Boston, Attorney to Be Noticed representing Arthur Stein.

(Plaintiff) David Bailey, (Plaintiff) Edwin Humphries, (Plaintiff) Robert Maccini, (Plaintiff) L. Jay Law, Ropes & Gray LLP, Boston, Attorney to Be Noticed representing David N. McCammon.

(Defendant) Heidi M. Mitza, Testa, Hurwitz & Thibeault, LLP, Boston, Attorney to Be Noticed representing H. Kerner Smith.

(Defendant) Elizabeth A. Rover Bailey, Ropes & Gray LLP, Boston, Attorney to Be Noticed representing David N. McCammon.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

LINDSAY, District Judge.

### I. Introduction

This is an alleged class action in which the lead plaintiffs are former employees of Stone & Webster, Inc. ("S & W" or "the Company") and/or certain of its subsidiaries participating in retirement savings plans offered by S & W. The lead plaintiffs propose a class of all participants in the Employee Investment Plan of Stone & Webster, Incorporated and Participating Subsidiaries (the "401(k) Plan") and the Employee Stock Ownership Plan of Stone & Webster, Incorporated and Participating Subsidiaries (the "ESOP Plan") (collectively, the "Plans") between January 22, 1998, and May 8, 2000.[1] The plaintiffs also bring this action on behalf of the Plans themselves. The defendants are H. Kerner Smith ("Smith"), S & W's former Chief Executive Officer, who, at all times relevant to this action, was also a member of S & W's Board of Directors (the "Board") and the Employee Benefits Committee of the Board (the "Committee"); Donna R. Bethell ("Bethell"), J. Angus McKee

("McKee"), David N. McCammon ("McCammon"), Peter M. Wood ("Wood"), and Edward J. Walsh ("Walsh"), each of whom, at all times relevant to this action, was a member of the Board and of the Committee; Peter M. Evans ("Evans"), a member of the Board who, at all times relevant to this action, was also an executive of S & W and one of its major subsidiaries; and Gerald Halpin III ("Halpin"), the former Vice President and Treasurer of S & W who, at all times relevant to this action, served as the Investment and Accounting Officer of the Committee, though he was not an appointed member of the Committee. The plaintiffs' First Amended Class Action Complaint ("the complaint") refers to Smith, McKee, Bethell, Wood, McCammon, and Walsh collectively as the "Committee Defendants."

The complaint is in four counts: count one alleges breaches by the defendants of their fiduciary duties, in violation of 29 U.S.C. § 1104(a)(1)(A)-(D) (ERISA § 404) and 29 U.S.C. § 1106 (ERISA § 406), with regard to the 401(k) Plan, and count three alleges breaches of the same statutory subsections with regard to the ESOP Plan. Counts two and four claim that the defendants are liable for the breaches of duty by their co-fiduciaries, pursuant to ERISA § 502(a) (29 U.S.C. § 1105(a)), with regard to the 401(k) Plan and the ESOP Plan respectively.

Defendant Smith has filed a motion to dismiss the complaint, pursuant to Fed. R.Civ.P. 12(b)(6), and all the other defendants collectively have filed a separate motion to dismiss the complaint to the extent it asserts claims against each or any of them. For the reasons stated below, I GRANT these motions in part and DENY them in part.

---

1. This period is thus denominated the "Class Period."

## II. Factual Allegations

The facts recited here, unless otherwise noted, are drawn from the complaint.

### A. The 401(k) Plan

█ The 401(k) Plan at issue was an "employee pension benefit plan," as defined in 29 U.S.C. § 1002(A). It was governed by a document entitled "Employee Investment Plan of Stone & Webster, Incorporated and Participating Subsidiaries" (the "401(k) Plan Document") and a trust agreement with Putnam Fiduciary Trust ("Putnam") as Trustee (the "401(k) Trust Agreement.") Compl. ¶¶ 21–22. According to the terms of both the 401(k) Plan Document and the 401(k) Trust Agreement, to the extent that there was any conflict between their respective provisions, the terms of the 401(k) Trust Agreement would be controlling. *Id.* ¶ 23.[2] Each participant in the 401(k) Plan could elect to contribute a portion of each of his or her paychecks to the 401(k) Plan, and participants were entitled to increase, decrease or suspend their contributions. *Id.* ¶ 25. The Company in turn would make matching contributions to each participant's account. These matching contributions were equal to (i) 25% of the first 1% of the amount of salary contributed by each participant (which contributions vested immediately), plus (ii) 25% of the next 4% of salary contributed by each participant (which additional contributions vested upon completion of five years' employment with S & W, or on the participant's death, retirement or attainment of age 65), plus (iii) certain other contributions at the discretion of S & W's Board (which vested on

the same terms as the contributions described in (ii) above). *Id.* ¶¶ 28–30. Although participants could allocate their own contributions among several investment options, including a Company Stock Fund that invested in equity securities of S & W, and could change the allocations of their own investments and the income thereon (except that participants could not transfer funds originally allocated to another investment option into the Company Stock Fund), all of S & W's matching contributions were made into the Company Stock Fund; participants could not reallocate these amounts to other investment options. *Id.* ¶¶ 26–30. The contributions made by S & W to the Company Stock Fund were permitted by the 401(k) Plan Document to be made in the form of shares of S & W's stock (or securities convertible into S & W's stock), or in cash. If the contributions were made in S & W securities, the securities were to have a fair market value equal to the amount of the contribution were it made in cash. The complaint alleges that S & W made all such contributions in S & W stock. *Id.* ¶¶ 28–30.

### B. The ESOP Plan.

The second employee benefit plan at issue in this litigation was an employee stock ownership plan, or ESOP, into which S & W was to make periodic contributions of its stock (either out of treasury shares or authorized, but unissued, share capital) or cash to purchase S & W stock for the benefit of participants. The complaint alleges that these contributions were always

---

**2.** The complaint attaches the 401(k) Plan Document as Exhibit 1 and the 401(k) Trust Agreement as Exhibit 2. These documents are integral to, and expressly relied upon in the complaint. Therefore, I may consider the relevant contents of these documents in evaluating the motions to dismiss, without converting the motions into motions for summary judgment. *See Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 32 (1st Cir.2000) (quoting *Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1220 (1st Cir. 1996)).

made in the form of shares of S & W stock. *Id.* ¶ 38. The ESOP Plan was governed by an ESOP Plan Document and an ESOP Trust Agreement, again with Putnam as the Trustee. The ESOP Plan Document specified that, with regard to provisions relating to the Trustee's responsibilities and/or conflicting provisions, the terms of the ESOP Trust Agreement would control. *Id.* ¶¶ 34–35.[3] Shares allocated to a participant's account in the ESOP vested on the same terms as the additional matching contributions to the 401(k) Plan described above, and under specified conditions, employees were entitled to transfer their ESOP shares to non-Company Stock Fund offerings included in the 401(k) Plan. *Id.* ¶¶ 39–40.

### C. Stone & Webster's Financial Collapse.

Throughout the proposed Class Period, the plaintiffs allege that S & W was experiencing increasing financial difficulties attributable to a policy of underbidding on fixed-price contracts that led to an accumulation of large, undisclosed losses on major projects as well as an impending liquidity crisis that was not adequately disclosed to the public. These alleged practices and difficulties, together with allegations that defendant Smith was integrally involved in making decisions about bidding and disclosure of S & W's finances, and that the other defendants either were aware or should have been aware of the mounting problems, are set out at great length in plaintiffs' 141–page, 375–plus–paragraph complaint. Much of the factual material alleged in the complaint echoes the complaint filed by a putative class of S & W shareholders in a separate action. *See In re Stone & Webster Securities Liti-*

*gation,* 253 F.Supp.2d 102 (D.Mass.2003). For the reasons set out in the discussion, *infra,* of the pleading standards applicable to an ERISA breach of fiduciary duty action, it is not necessary to include here a more detailed summary of the allegations in the instant case.

### III. Applicable Legal Standards.

### A. Standard on Motion to Dismiss.

■ Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint for failure to state a claim upon which relief can be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations . . . . The factual allegations of the complaint are to be accepted as true, and all reasonable inferences that might be drawn from them are indulged in favor of the pleader." *Gorski v. New Hampshire Dep't of Corrections,* 290 F.3d 466, 473 (1st Cir.2002) (internal quotation marks and citations omitted). Thus, the typical defendant's burden is a heavy one when a motion to dismiss is filed, particularly in light of the Supreme Court's recent re-affirmation of the "notice pleading" standard of Fed.R.Civ.P. 8(a). *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 ("If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding."). In this case, both Smith and the other defendants collectively have moved to dismiss the complaint on the alternative bases that (i) the cause of action asserted by the plaintiffs sounds in fraud and the plaintiffs have not met the higher standard for pleading in cases of

---

**3.** The ESOP Plan Document is attached to the complaint as Exhibit 3 and the ESOP Trust Agreement is attached as Exhibit 4. As with the 401(k) Plan Document and 401(k) Trust Agreement, consideration of the relevant contents of each of these documents is appropriate in connection with the motions to dismiss.

fraud or mistake set forth in Fed.R.Civ.P. 9(b); or (ii) whether or not the heightened standard of Rule 9(b) is applicable, the plaintiffs cannot show, as a matter of law, that the acts of the defendants give rise to a claim for breach of fiduciary duty under ERISA.

### B. Rule 9(b) Pleading Standard.

Rule 9(b) of the Federal Rules of Civil Procedure represents a departure from the general, notice pleading standard of Rule 8(a) and is applicable in cases where a plaintiff pleads fraud or mistake. It provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The briefs submitted by Smith and by the other defendants urge that this standard applies to the complaint in this case. Smith also contends that First Circuit law requires the plaintiffs to allege facts giving rise to a strong inference of scienter on his part. *See* Defendant H. Kerner Smith's Memorandum of Law in Support of his Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Smith Mem.") at 22. The plaintiffs, for their part, argue that the simplified, notice pleading standard of Rule 8(a) applies.

### C. Elements of ERISA Breach of Fiduciary Duty Claim.

"ERISA's fiduciary duty provisions not only describe who is a 'fiduciary' or 'co-fiduciary,' but also what activities constitute a breach of fiduciary duty." *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 18 (1st Cir.1998). Under ERISA, a person (natural or legal) can be a fiduciary by virtue of being either named as such or by acting in a fiduciary capacity with regard to an ERISA plan. *See* 29 U.S.C. § 1102(a)(1) (requiring every plan qualified under ERISA to have at least one "named fiduciary"); 29 U.S.C. § 1002(21)(A) (enumerating activities resulting in what has been described as "functional fiduciary" status). The key to a claim that a person who is not a "named fiduciary" is nonetheless subject to fiduciary liability is the exercise of discretionary authority:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

The plaintiffs must therefore properly allege, with respect to a defendant, that he or she meets one of the statutory tests for fiduciary status before liability can be found for any alleged breach by that defendant.

Even at this early stage of the proceedings, however, the inquiry does not end with an evaluation of plaintiffs' pleading of fiduciary status because that status

> is not an all or nothing proposition; the statutory language indicates that a person is a plan fiduciary only to the extent that he possesses or exercises the requisite discretion and control...Because one's fiduciary responsibility under ERISA is directly and solely attributable to his possession or exercise of discretionary authority, fiduciary liability arises in specific increments correlated to the vesting or performance of par-

ticular fiduciary functions in service of the plan, not in broad, general terms. *Beddall,* 137 F.3d at 18 (internal quotation marks and citations omitted).

■ Thus, in order to have properly pleaded a breach by any defendant of a fiduciary duty, the plaintiffs must plead first that the defendant was a fiduciary with respect to one of the Plans and that he or she breached a duty to that Plan that related to matters within his or her discretion and control.

ERISA requires fiduciaries to discharge their obligations "solely in the interest of the [plan] participants and beneficiaries." 29 U.S.C. § 1104(a)(1). This must be done "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims[.]" *Id.* § 1104(a)(1)(B). ERISA fiduciaries also have a duty to diversify the investments of the plan in question "so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so," and to manage the plan "in accordance with the documents and instruments governing [it] insofar as such documents and instruments are not inconsistent" with the provisions of the statute. *Id.* §§ 1104(a)(1)(C) & (D).

## IV. Analysis

### A. Applicability of Rule 9(b).

The similarity of the complaint in this action to the First Consolidated and Amended Class Action Complaint filed in *In re Stone & Webster Securities Litigation* has engendered lengthy briefing by the defendants on the one hand, and by the plaintiffs on the other. Much of this dispute is characterized by unnecessary rebarbativeness by all involved, and the dispute on the whole is beside the point because the many pages of factual recitations relating to financial chicanery lend no necessary weight to a claim for breach of fiduciary duty.

Assuming for purposes of this discussion that plaintiffs have both properly identified the defendants as fiduciaries of the 401(k) Plan and ESOP Plan and have asserted breaches remediable under ERISA—whether of the "prudent man" obligation, the duty to diversify, or otherwise—then no further detail is required. The defendants argue that because the plaintiffs repeatedly allege that Smith knew of the alleged underbidding and liquidity problems; that the other defendants knew or should have known of these problems, given information available to them; and that the information provided to the directors was kept from participants in the 401(k) Plan and the ESOP Plan as well as from S & W's other shareholders, the plaintiffs' cause of action is essentially a claim of fraud. Smith in particular discusses at length a District of Maryland case in which allegations of securities fraud, pursuant to section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and rule 10b–5 promulgated thereunder, were made alongside allegations in separate complaints of breaches of sections 11 and 12(2) of the Securities Act of 1933 (the "Securities Act") that were not grounded in fraud. *See* Smith Mem. at 16–17 (discussing *Hershey v. MNC Fin., Inc.,* 774 F.Supp. 367 (D.Md.1991)). However, the *Hershey* case—even if correctly decided—does not provide such an apt analogy for this complaint as Smith believes. Both the Securities Act and the Exchange Act are intended in part to protect investors in the public marketplace by attaching consequences to the making, by registered companies, of inaccurate or misleading statements. The difference between section 10(b) of the Exchange Act, on the one hand, and sections 11 and 12(2) of the Securities Act, on the

other, is that section 10(b) requires plaintiffs to plead scienter on the part of the defendants with particularity—an element not required under the Securities Act causes of action. *See Giarraputo v. UNUMProvident Corp.*, 2000 WL 1701294, at *10 (D.Me. Nov.8, 2000) (declining to extend *Hershey*'s application of Rule 9(b) to section 11 and section 12(2) causes of action).

■ Cases in which there may be overlapping interests or claims brought under the securities laws by public shareholder plaintiffs and claims by employee stakeholders whose securities were acquired through ERISA plans, thus entitling them to the protection of ERISA's fiduciary duty standards, are not unheard of. A California district court has very recently examined a similar situation and concluded that allegations that the issuance by WorldCom, Inc. of "false, misleading, incomplete, and inaccurate disclosures" to employee benefit plan participants constituted a breach of "fiduciary duties to act solely in the interests of the participants and act prudently" sounded in fraud and were required to be pleaded with the specificity called for by Rule 9(b). *Vivien v. Worldcom, Inc.*, 2002 WL 31640557, at *6–7 (N.D.Cal. July 26, 2002). The *Vivien* court, however, also concluded that a claim that the defendants breached their fiduciary duty to review the investment policies and performance of the investment options offered was sufficient to state a claim on which relief could be granted. This claim was *not* required to be pleaded with any further specificity, despite the fact that it included a claim that the defendants continued to allow contributions to the plans to be made in WorldCom stock notwithstanding "the fact that defendants *allegedly knew* of WorldCom's financial woes and misrepresentations." *Id.* at *5 (emphasis added). Following the reasoning of this

decision, I conclude that the plaintiffs' claim that any defendant with a fiduciary duty to monitor and evaluate the performance of S & W stock as an investment option for one or both of the Plans breached that duty because he or she allegedly knew or should have known of problems within the Company is sufficient to withstand a motion to dismiss, based on Rule 8(a)'s lenient pleading standard. The *Vivien* court recognized that there will exist some tension between the stringent standards required to plead a case of securities fraud as against a case of breach of ERISA fiduciary duty, but no perceived unfairness of this mismatch in the securities and ERISA statutory regimes is remediable on a motion to dismiss. "[I]t is impossible to rule out as a matter of law any and all ERISA recovery at the pleadings stage simply because federal securities law may provide overlapping relief." *Id.* at *8.

**B. ERISA Breach of Fiduciary Duty.**

The discussion above does not end the inquiry as to whether this case can proceed against these defendants. Despite the great length of the complaint, the plaintiffs' theories alleging breach of fiduciary duty actually occupy only one paragraph. In ¶ 347, the plaintiffs allege that the defendants are liable for their own breaches and/or breaches by their co-fiduciaries:

as a result of their actions or omissions during the relevant time period, including, but not limited to: acquisition of Company stock, acquisition of Company stock for more than adequate consideration, retention of Company stock, making and accepting contributions of Company stock as opposed to cash, failure to bring a breach of fiduciary duty claim on behalf of the Plans..., self-dealing, engaging in transactions on behalf of a party with interests adverse to the Plans

and [their] beneficiaries, failure to disclose material information to the participants of the Plans, failure to investigate and adequately monitor the performance of their fellow fiduciaries, failure to remedy breaches of fiduciary duty, failure to remove fellow fiduciaries from their positions, failure to resign in the face of a conflict of interest, failure to conduct a prudent investigation of the propriety of these actions and/or omissions, and failure to hire an independent service provider to evaluate the propriety of these actions and/or omissions.

Compl. ¶ 347.

As discussed above in section III(C), this analysis is in two parts. First, in order to survive a 12(b)(6) motion to dismiss, plaintiffs must sufficiently allege that each defendant had the status of a fiduciary. The second step requires a sufficient allegation that such alleged fiduciaries breached their duties with respect to some aspect of the 401(k) Plan and/or the ESOP Plan that was within their discretion or control.

**1. Fiduciary Status.** Because of the different roles assigned to each of the defendants within S & W's corporate structure, it is necessary to discuss the adequacy of allegations of fiduciary status with respect to each of them separately, except in the case of the Committee Defendants:

■ *(i) Fiduciary Status of Committee Defendants.* The complaint alleges that each of defendants Smith, McKee, Bethell, Wood, McCammon, and Walsh was, at all relevant times, a member of the Committee. The 401(k) Trust Agreement expressly provides that both the Committee and the Company were to serve as named fiduciaries of the 401(k) Plan (although in slightly different capacities, detailed *infra* ), and the ESOP Plan Document likewise specified that the "plan administrator," identified in the

ESOP Plan Document or otherwise designated by the Board, was also a named fiduciary within the meaning of ERISA. Compl. ¶¶ 46, 54. Both the ESOP Plan Document and a resolution adopted by the Board identified the Committee as being responsible for the administration of the ESOP Plan. *Id.* ¶¶ 53, 55. The Committee Defendants, other than Smith, in their Memorandum of Law in Support of the Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) ("Bethell et al. Mem.") make the point that "[t]he Plans do not make any individual defendant a fiduciary with respect to any function that the plaintiffs claim was causally related to the decline in the value of shares held in the Plans." *Id.* at 19. These defendants cite *Confer v. Custom Engineering Co.,* 952 F.2d 34 (3d Cir. 1991) for the principle that "when an ERISA plan names a corporation as a fiduciary, the officers who exercise discretion on behalf of that corporation are not fiduciaries within the meaning of [ERISA] section 3(21)(A)(iii), unless it can be shown that these officers have *individual* discretionary roles as to plan administration." *Confer,* 952 F.2d at 37.

Leaving aside the "individual discretionary roles" question for the moment, *Confer* is distinguishable on its face: the Third Circuit panel in that case was constrained in reaching its decision by the law of corporations. A corporation, though it has the legal status of personhood, cannot act *except* through its officers, and the *Confer* panel expressly declined to state a general rule that officers of a corporation take on fiduciary status whenever the corporation itself is designated a "named fiduciary," because such a rule could in theory subject every corporate action to ERISA fiduciary liability. *See id.* In this case, S & W, acting through the Board, expressly designated the Committee a "named fiduciary"

when it appointed the Committee to the position of Plan Administrator. Liability—if there is to be any—will be predicated on this deliberately conferred status, not on the happenstance of one's holding corporate office generally, as was the claim of the plaintiffs in *Confer*. The defendants who were members of the Committee cannot prevail in their efforts to dismiss this complaint solely on the basis of a claim that their membership in the Committee does not subject them to fiduciary liability.

*(ii) Fiduciary Status of Halpin and Evans.* The above analysis does not apply to defendants Halpin or Evans, as neither of them is alleged to have been a member of the Committee. Rather, Evans was a member of the Board who is alleged merely to have attended some of the Committee's meetings. Compl. ¶ 70. Therefore, the rule in *Confer* requires dismissal of the complaint as regards Evans unless plaintiffs allege that he has exercised some individual discretionary authority over either of the Plans.

■ *Confer* has been criticized to some extent—notably by *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449 (9th Cir.1995), which declined to state, as an absolute matter, than an officer acting on behalf of a named fiduciary corporation could not be a fiduciary if he or she performed acts within his or her official capacity, notwithstanding that no fiduciary duties had been expressly delegated to that officer. *See id.* at 1461. However, even *Kayes*, in the end, stands for the unremarkable proposition that fiduciary status under ERISA is determined with reference to a (legal or natural) person's discretionary authority. *See id.* at 1460 ("[T]he definition of who is a fiduciary…is based on the person's functions, not the title conferred by the Plan."). Put another way, I cannot hold that Evans is a fiduciary of the Plans based solely on his status as a director of S & W; at the same

time, this determination is insufficient to warrant dismissal of the claims against him if the plaintiffs have alleged that he acted with the discretion that is the hallmark of ERISA fiduciary status. I will address shortly the question of whether the plaintiffs have sufficiently alleged the exercise by Evans of discretionary authority with respect to the two plans.

Defendant Halpin is in a slightly different position vis-à-vis a strictly "status"-based pleading of fiduciary duty. The plaintiffs have alleged that he, as Investment and Accounting Officer of the Committee, "rendered investment advice to the Plans with respect to moneys or property of such Plans for a fee or other compensation[.]" Compl. ¶ 20. The United States Department of Labor has issued guidance on what this means, stating that a person will be considered to have given investment advice only if the advice deals with "the value of securities or other property, or…recommendation[s] as to the advisability of investing in, purchasing, or selling securities or other property." Such advice must be delivered "on a regular basis…pursuant to a mutual agreement, arrangement or understanding, written or otherwise…that such services will serve as a primary basis for investment decisions with respect to plan assets." 29 C.F.R. § 2510.3–21(c)(i) (1992). While the question of fiduciary liability for investment advisors more typically arises with respect to outside advisors engaged by a plan sponsor, *see, e.g., Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114, 1117 (9th Cir.1994) (citing cases), the defendants have not provided any reason why such liability cannot or should not attach to an officer acting in an advisory capacity. At the motion to dismiss stage, therefore, allegations of Halpin's fiduciary responsibility will stand or fall based on

the question of discretionary authority, which I will discuss below.

■ **2. Acts Within Fiduciary Discretion.** As noted earlier, simply asserting that a defendant falls into one of ERISA's defined categories of fiduciaries is not sufficient to withstand a motion to dismiss. Each of the defendants in this action has premised his or her motion to dismiss—at least in part—on the assertion that the complained-of breaches of fiduciary duty do not constitute acts within the scope of his or her respective fiduciary duties. I will discuss below the sufficiency of the complaint with regard to the Committee Defendants as a group, to Smith as a member of the Committee and individually, and to Evans and Halpin individually.

*(i) Scope of Fiduciary Duties of Committee Defendants.* The brief submitted by the Committee Defendants in support of their motion to dismiss cites the following reasons in support of their claim that they cannot, under any set of facts demonstrable by the plaintiffs, be held to have breached their fiduciary duties to the Plans: (a) the decision to make contributions to each of the ESOP and the Company Stock Fund was made by the Company in its capacity as settlor, and therefore no fiduciary duty is implicated; (b) the Committee Defendants had no discretionary authority to change or discontinue these investment options; and (c) because of the nature of the ESOP and the 401(k) Company Stock Fund, the Committee defendants are entitled to a presumption that the investment in S & W securities was appropriate.

■ *(a) No fiduciary liability for act of settlor.* The first of these points appears to be correct as a matter of law. Courts in other circuits have faced similar claims of breach of fiduciary duty with respect to plan design, and have held that initial decisions regarding the setup of a plan are not fiduciary acts giving rise to ERISA liability. *See, e.g., Akers v. Palmer*, 71 F.3d 226, 230 (6th Cir.1995) (citing cases for principle that "only actions respecting the *administration* or *management* of plan 'assets' are subject to fiduciary standards" (emphasis in original)); *In re Ikon Office Solutions, Inc. Securities Litigation*, 86 F.Supp.2d 481, 490–91 (E.D.Pa.2000) (discussing attachment of fiduciary liability at "such point that the employer begins to exercise 'discretionary authority or control over plan management or administration[.]' " (citation omitted)). Although the First Circuit has not spoken directly to this question, the plain language of the statute makes it clear that the ERISA scheme contemplates imposition of fiduciary liability in the context of administration of a plan. *See* 29 U.S.C. § 1102(a)(1) (requiring that employee benefit plans be established and maintained pursuant to a written instrument which provides for the naming of one or more fiduciaries with authority to control and manage the operation and administration of the plan). Thus, the plaintiffs cannot demonstrate fiduciary liability of the Committee defendants relative to the decision to set up the ESOP Plan and the 401(k) Company Stock Fund as vehicles for investments·primarily in S & W securities, nor for any decisions on the part of S & W to make contributions (matching or otherwise) to these vehicles in the form of S & W securities.

*(b) Acts within discretionary authority of Committee Defendants.* The more difficult position staked out by the Committee Defendants is their claim that the documents governing the ESOP and the 401(k) Plan did not give to them discretionary authority over investment decisions. This is the aspect of their argument that relates to the question whether they were acting as fiduciaries in taking the actions alleged

to have constituted breaches of their duties. Taking as true all facts alleged by the plaintiffs and considering the contents of the 401(k) Plan Document, the 401(k) Trust Agreement, the ESOP Plan Document and the ESOP Trust Agreement, I conclude that the plaintiffs have alleged facts sufficient to withstand a rule 12(b)(6) motion to dismiss.

■■■ The Committee Defendants rely largely on language in the 401(k) Plan Document (stating that the "Committee shall have no power to determine or control the investment of the Trust Fund") and the requirement in the ESOP Plan Document that contributions made in cash be used to purchase S & W shares to support their argument that the Plans, by their terms, removed from the Committee Defendants any discretionary authority to change the Plans and/or to evaluate the appropriateness of investment by the Plans in S & W stock. However, the 401(k) Trust Agreement states that "[t]he Company as named fiduciary shall continually monitor the suitability of acquiring and holding Company Stock in the Company Stock Fund under the fiduciary duty rules" of ERISA. 401(k) Trust Agreement at 4. The plaintiffs have further alleged that certain resolutions of the Board delegated to the Committee the responsibility to "review the allocation and diversification of [401(k)] Plan assets and take appropriate action to insure adherence with investment guidelines established for such Plan." Compl. ¶ 47. Also delegated to the Committee was the duty to review the performance of the 401(k) "trustees, investment managers and other fiduciaries." *Id.* It is not unreasonable to infer from these provisions that S & W, as the named fiduciary responsible for evaluating the appropriateness of the investment in its own stock, was authorizing the Committee to act on its behalf in making some of those decisions. Given these factual assertions and the rule in *Kayes*, which allows officers acting on behalf of a named fiduciary to be held liable for actions taken in the execution of the named fiduciary's duties, I cannot conclude at this stage that the plaintiffs can show no set of facts on which relief might be granted. *See Kayes*, 51 F.3d at 1460 ("There is no indication [in ERISA] that an officer of a named fiduciary cannot be a fiduciary and the personal liability provision asserts that all fiduciaries will be held personally liable, without mention of named fiduciaries.") Therefore, plaintiffs' claims, premised on the allegation that the Committee failed adequately to monitor the appropriateness of the investment in S & W stock by the Company Stock Fund of the 401(k) Plan, will not be dismissed.

■■ The Committee's position is even weaker as regards the ESOP Plan. In that Plan, the duty to review investments for suitability was assigned to the Administrator—i.e., the Committee itself. *See* ESOP Trust Agreement at 4–5. Where the governing documents of the ESOP Plan specifically grant to the Committee the duty to review the suitability of maintaining the ESOP's investment in company stock, I cannot conceive of any reason to dismiss the ESOP claim against the Committee Defendants on the ground that they had no discretionary authority over the ESOP's investment activities. Count three, therefore, will not be dismissed as pleaded against the Committee.

■■■ *(c) Presumption of reasonableness for ESOP, Company Stock Fund.* With respect to the defendants' assertion that they are entitled to a presumption that the investment decisions made on behalf of the ESOP Plan did not violate their fiduciary duty, and that the complaint must therefore be dismissed insofar as it is premised on such a claim, I agree that

they are entitled to such a presumption. I disagree, however, as to the effect of the presumption. Two cases in the Sixth and Third Circuits, respectively, discuss ESOPs as being a statutorily created species of investment vehicle specifically exempt from ERISA's diversification requirements. *See Moench v. Robertson,* 62 F.3d 553, 568 (3rd Cir.1995); *Kuper v. Iovenko,* 66 F.3d 1447, 1458 (6th Cir.1995). Because the very purpose of an ESOP is to promote employee stock ownership, holding ESOP fiduciaries to the same duty as fiduciaries of other kinds of pension plans to diversify investments in order to reduce the risk of large losses would "risk transforming ESOPs into ordinary pension plans, thus frustrating [Congressional intent]...and contravening the intent of the parties." *Kuper,* 66 F.3d at 1459. However, both *Kuper* and *Moench* conclude that exempting ESOP fiduciaries *absolutely* from the duty to diversify would also frustrate ERISA's larger goal of protecting employee-investors:

> The Third Circuit found that the better balance between these concerns [i.e., the goal of promoting investment in employer securities and the goal of protecting investors] was achieved by measuring a fiduciary's decision to continue investing in employer securities for an abuse of discretion...Thus, it held that "keeping in mind the purpose behind ERISA and the nature of ESOPs themselves, ...an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion...."

*Kuper,* 66 F.3d at 1459 (quoting *Moench,* 62 F.3d at 571) (internal citations omitted). Applying this sensible balancing of interests, I conclude that it cannot be said at this stage that the plaintiffs can prove no set of facts demonstrating that the Committee Defendants breached their fiduciary duty to the ESOP Plan participants by failing to diversify ESOP Plan investments. Of course, the plaintiffs must clear a high evidentiary hurdle to rebut the presumption that the Committee Defendants acted within the scope of conduct required by ERISA in failing to diversify the ESOP's assets—but that is a matter for a later date. *See Vivien,* 2002 WL 31640557, at * 5 (no need for plaintiffs to plead facts rebutting presumption that reasonable fiduciary would have made different decision to survive motion to dismiss).

■ The presumption does not necessarily apply to plaintiffs' claims regarding the 401(k) Plan. Although the 401(k) Trust Agreement contains language requiring Company Stock Fund investments to be made in the form of "qualifying employer securities" as defined in and permitted by ERISA, it is not apparent to me at this stage that the 401(k) Plan is an "eligible individual account plan" under 29 U.S.C. § 1107(b) and thus exempt from the percentage limitations otherwise imposed on investments in employer securities. In any case, whether the presumption applies to the 401(k) Plan or not, the plaintiff's task of rebuttal would be more appropriately reserved for a later stage of this case.

■ *(ii) Acts by Defendant Smith Within Scope of Fiduciary Duties.* All of the foregoing analysis applies to Smith as a member of the Committee. However, it appears that the plaintiffs, wishing to cover all possible bases, also assert against Smith a claim for breach of fiduciary duty for failure to disclose complete information about S & W's financial condition to participants in the Plans. Many of the statements alleged to have been lacking were

made not by Smith, but by S & W—e.g., press releases and periodic filings with the Securities and Exchange Commission. With respect to these statements, no fiduciary liability can be implicated: these were statements made to the market in general, not to Plan participants specifically. The Supreme Court addressed the questions that arise when a person charged with fiduciary duties speaks on behalf of an employer in *Varity v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). In *Varity,* a corporate officer was sued for allegedly misrepresenting the overall condition of the employer company in materials (videotaped and written) intended to provide information to employees about their benefits. Considering carefully this factual background and weighing the difficulty inherent in distinguishing between statements by an officer wearing his "employer hat" versus his "fiduciary hat," the Court concluded that the context made all the difference, holding "that making intentional representations about the future of plan benefits [in the context of a meeting convened to discuss plan benefits] is an act of plan administration." *Varity,* 516 U.S. at 505, 116 S.Ct. at 1074. The plaintiffs here cannot show any set of facts that would tend to prove that statements attributed to Smith in press releases and SEC filings were made in the context of a discussion of Plan benefits, and no plausible argument can be made that the issuance of such statements is an "act of plan administration." [4]

■ There were, however, certain statements attributed to Smith that plaintiffs allege were made to address "in particular [employees'] investments in Stone & Webster stock." Compl. ¶ 330. Paragraphs 329–337 of the complaint discuss six communications addressed to employees, each of which allegedly fails fully to inform employees of facts Smith knew or should have known, and which could have been material to the Plan participants in making investment decisions: (i) a March 18, 1999 Special Message to Employees, in which Smith addressed the topic of S & W's "disappointing 1998 financial performance and recent drop in stock price" and encouraged employees to "focus on what we can do together to move past this difficult period", *id.* ¶ 331; (ii) a May 7, 1999 Special Message to Employees assuring employees that S & W was taking steps to "turn the Company around", *id.* ¶ 332, and attaching a report by analysts at Credit Suisse First Boston that predicted strong growth for S & W, *id.* ¶¶ 259–61, 333; (iii) an October 29, 1999 communication to employees assuring employees that S & W was not headed for bankruptcy despite disappointing third quarter results, *id.* ¶ 334; (iv) a March 31, 2000 communication that characterized 1999 as a "turbulent year" for S & W, but went on to discuss measures such as a sale of S & W stock to the Employee Retirement Plan, undertaken to improve S & W's liquidity position, *id.* ¶ 335; (v) an alleged oral statement of Smith that he believed S & W stock was a good investment, made at a March, 2000 meeting with employees, *id.* ¶ 336; and (vi) an April 19, 2000 communication to employees announcing a new credit facility, which Smith characterized as testament "to the fundamental soundness of [S & W's] approach to putting our problem projects behind us", *id.* ¶ 337. With respect to these statements, the plaintiffs may be able to show the specific contextual facts required by *Varity* in order to prove that Smith spoke while wear-

---

4. I note that these statements are the same statements that form the basis of the securities fraud complaint filed in *In Re Stone & Webster Securities Litigation.* *See id.,* 253

F.Supp.2d at 116–120. The proper remedy for alleged misrepresentations in these statements is to be had, if at all, in a suit under the securities laws, not under ERISA.

ing his "fiduciary hat," although no such showing has been (or need be) made at this stage.

In continuing with a claim against Smith on the basis of these statements, plaintiffs will have the burden of showing that a fiduciary duty to disclose additional information in fact existed. The *Varity* Court declined to reach the question of "whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative, or in response to employee inquiries," 516 U.S. at 506, 116 S.Ct. 1065, 134 L.Ed.2d 130, though several circuits— including the First Circuit—"have held that, in certain circumstances, a fiduciary has an obligation to accurately convey material information to beneficiaries, including material information that the beneficiary did not specifically request." *Watson v. Deaconess Waltham Hosp.*, 298 F.3d 102, 114 (1st Cir.2002) (citing cases from the Third, Fourth, Sixth, Seventh, Ninth and D.C. Circuits). Again, it cannot be said at this stage that the allegations, as outlined by the plaintiffs, will fail under any set of facts to state a claim under ERISA for these actions attributed to Smith.

 *(iii) "Functional Fiduciary" Status of Defendants Evan and Halpin.* I concluded above that defendant Evans could not be said to be a fiduciary simply because he is named alongside the Committee members. I must now evaluate whether, like the individual defendants in *Kayes,* he has been alleged to have acted in a manner consistent with that of a fiduciary exercising discretion over the administration of an ERISA plan. I find the complaint, despite its length, lacking in any but the barest of such an allegation. Evans is simply alleged to have been a member of the Board. Compl. ¶ 19. The Board, to be sure, had the responsibility to appoint the Trustee and the Committee, *see id.* ¶¶ 42 (401(k) Plan), 50 (ESOP Plan), and the Company itself was charged with

the duty of monitoring the suitability of investments in S & W stock by the 401(k) Plan, *see* 401(k) Trust Agreement at 4. It is not clear to me, however, that the plaintiffs have pleaded, as a cause of action, a breach by the Board in connection with their selection of Putnam as the Trustee or in the appointment of the Committee as Plan Administrator. I must therefore dismiss any claim against Evans premised on that theory, with leave given to the plaintiffs to amend the complaint if there are grounds for such an amendment consistent with the rulings made in this Memorandum and Order.

 The alleged failure by Evans, as a member of the Board, to monitor the suitability of S & W stock as a 401(k) investment is more clearly within the scope of causes of action properly asserted following the logic of *Kayes,* and is therefore sufficient to survive a motion to dismiss. I note, however, that the plaintiffs have a hard road ahead of them in proving that Evans, as a single member of the Board, was acting on behalf of the Company.

 With respect to defendant Halpin, the plaintiffs have alleged that his rendering of investment advice to the Plans in exchange for a fee or other compensation makes him a fiduciary. As discussed *supra,* this is not enough: the plaintiffs must also make allegations sufficient to withstand Rule 12(b)(6) scrutiny that Halpin breached some duty within the scope of his fiduciary responsibility. Presumably, this is the claim set forth in ¶ 347 that the defendants "fail[ed] to investigate and adequately monitor the merits of the plan investments." However, nowhere is it alleged that these actions were within the scope of Halpin's duties as the Investment and Accounting Officer of the Committee. I must therefore dismiss claims against Halpin premised on any such alleged

breach, but I do so giving the plaintiffs leave to re-plead.

### C. Co–Fiduciary Liability.

ERISA permits suit against a fiduciary for breaches committed by other fiduciaries of the same plan:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

■■■ The complaint alleges that each defendant should be held liable for breaches of fiduciary duty by the other defendants. However, the complaint does not specify which breaches by which putative fiduciaries were known of and/or facilitated by which co-fiduciaries, except insofar as it alleges that Smith knew that statements made in public filings and press releases were inadequate as disclosures to employees, and "the other Defendants" knew, or should have known, that the statements were inadequate. I have concluded above, however, that to the extent that the statements in question are alleged to have been made by Smith, they were not made by him in a fiduciary capacity; if the statements cannot form the basis for a claim of breach of fiduciary duty against Smith, they certainly cannot be used to hold the other defendants liable for Smith's lacunae. I note as well that, by pleading that the other defendants knew or should have known of alleged breaches by Smith, the plaintiffs have not met the standard set forth in ERISA, which requires an allegation of *knowing* participation in or facilitation of the underlying breach, by way of an independent breach by the co-fiduciaries. The plaintiffs' claims based on co-fiduciary liability, as set forth in counts two and four, will be dismissed without prejudice as inadequately pleaded.

### V. CONCLUSION

For the reasons and to the extent stated above, the motion to dismiss claims asserted in counts one and three is DENIED with respect to the Committee Defendants (including Smith) and defendant Evans. The motion to dismiss the claims asserted against defendant Halpin in counts one and three is GRANTED, but these claims are dismissed without prejudice. The motion to dismiss claims asserted in counts two and four is GRANTED with respect to all defendants, but these claims are dismissed without prejudice.

SO ORDERED.