**John G. KLING, personally and in a representative capacity for the Harnischfeger Industries Employees' Savings Plan, Plaintiff,**

v.

**FIDELITY MANAGEMENT TRUST CO., Francis M. Corby, Jr., et. al., Defendants.**

**No. 01–CV–11939–MEL.**

United States District Court,
D. Massachusetts.

June 23, 2004.

---

See, also, 291 F.Supp.2d 1.

134

Wilber H. Boies, McDermott, Will & Emery, Chicago, IL, for L. Donald La-Torre, Leonard E. Redon, Ralph C. Joynes, Stephen M. Peck, Francis M. Corby, Jr., Donna M. Alvarado, Eugene L. Fuhrmann, James C. Benjamin, Jeralyn J. Meyer, Joseph A. Podawiltz, Kim R. Kodousek, Somerset R. Waters, Stephen W. Skatrud, Jean–Pierre LaBruyere, Defendants.

Brian P. Brooks, O'Melveny & Myers, Washington, DC, James S. Dittmar, Goodwin Procter LLP, Boston, MA, Robert N. Eccles, O'Melveny & Myers, Washington, DC, James O. Fleckner, Goodwin Procter LLP, Boston, MA, for Fidelity Management And Research Corporation of Massachusetts, Defendant.

Ellen M. Doyle, Malakoff, Doyle & Finberg, P.C., Pittsburgh, PA, Robert D. Friedman, Perkins, Smith & Cohen, LLP, Boston, MA, C. Thomas Mason, Tucson, AZ, Harry S. Miller, Perkins, Smith & Cohen, LLP, Boston, MA, Matthew J. Tuttle, Perkins, Smith & Cohen, LLP, Boston, MA, Gerald S. Walsh, Peter J. Walsh, Walsh & Keating, S.C., Wauwatosa, WI, for John G. Kling, Plaintiff.

Steven W. Kasten, McDermott, Will & Emery, Boston, MA, for Harnischfeger Industries, Inc. Board of Directors Pension Committee, Harnischfeger Industries, Inc. Pension and Investment Committee, Joy Global Retirement Savings Plan, Joy Glob-

al, Inc., Donna M. Alvarado, Eugene L. Fuhrmann, Francis M. Corby, Jr., James C. Benjamin, Jean–Pierre LaBruyere, Jeralyn J. Meyer, Joseph A. Podawiltz, Kenneth A. Hiltz, Kim R. Kodousek, L. Donald LaTorre, Leonard E. Redon, Ralph C. Joynes, Somerset R. Waters, Stephen M. Peck, Stephen W. Skatrud, Defendants.

Brian W. Robinson, McDermott, Will & Emery, Boston, MA, for L. Donald LaTorre, Leonard E. Redon, Ralph C. Joynes, Stephen M. Peck, Eugene L. Fuhrmann, Francis M. Corby, Jr., James C. Benjamin, Jeralyn J. Meyer, Joseph A. Podawiltz, Kim R. Kodousek, Somerset R. Waters, Stephen W. Skatrud, Donna M. Alvarado, Jean–Pierre LaBruyere, Defendants.

Nancy G Ross, McDermott, Will & Emery, Chicago, IL, for Donna M. Alvarado, Leonard E. Redon, Ralph C. Joynes, Stephen M. Peck, Eugene L. Fuhrmann, Francis M. Corby, Jr., James C. Benjamin, Jeralyn J. Meyer, Joseph A. Podawiltz, Kim R. Kodousek, Somerset R. Waters, Stephen W. Skatrud, Jean–Pierre LaBruyere, L. Donald LaTorre, Defendants.

## MEMORANDUM AND ORDER

LASKER, District Judge.

John Kling, an employee of Harnischfeger Industries, Inc. ("Harnischfeger"), sues Fidelity Management Trust Company ("Fidelity"), a number of individually-named Harnischfeger directors, officers, and employees,[1] the Harnischfeger Industries Employees' Savings Plan ("Plan"), the Harnischfeger Industries, Inc. Pension and Investment Committee ("Investment Committee"), and the Harnischfeger Industries, Inc. Board of Directors Pension Committee ("Pension Committee") for breach of fiduciary duty and prohibited transactions in violation of ERISA §§ 404(a) and 406(b), 29 U.S.C. §§ 1104(a), 1106(b). The non-Fidelity defendants are referred to herein as the "Harnischfeger Defendants."

Certain of the Harnischfeger Defendants move to dismiss Counts II and IV of the Second Amended Complaint, and to dismiss the Plan as a nominal defendant. Fidelity moves to dismiss Counts III and IV. Kling moves to disqualify McDermott, Will & Emery from representing the Plan.

The Harnischfeger Defendants' Motion to Dismiss is GRANTED IN PART, and DENIED IN PART. Fidelity's Motion to Dismiss is DENIED. Kling's Motion to Disqualify is DENIED AS MOOT.

### I. Procedural Background[2]

Kling filed his Complaint on November 9, 2001, and filed a First Amended Complaint ("FAC") on December 19, 2001. Fidelity and the Harnischfeger Defendants subsequently moved to dismiss; these motions were denied on June 3, 2003. On October 31, 2003, Kling moved to file a Second Amended Complaint ("SAC"), and the motion was granted upon Defendants' assent.

---

1. The individual defendants named in the caption of the Second Amended Complaint are: Francis M. Corby, Jr., Stephen W. Skatrud, James C. Benjamin, Jeralyn J. Meyer, Joseph A. Podawiltz, Kim R. Koudesek, Somerset R. Waters, Eugene L. Fuhrman, Kenneth Hiltz, Donna M. Labruyere, L. Donald Latorre, Ralph C. Joynes, Leonard E. Redon, Stephen M. Peck, and Does 1–15. There appears to be a typographical error in the caption, as the body of the complaint names Donna M. Alvarado and Jean–Pierre Labruyare (but not Donna M. Labruyere) as defendants.

2. The factual allegations contained in the Complaint have been described in the Memorandum and Order of June 3, 2003 (the "June 3 Order") and need not be repeated here.

The SAC adds the following defendants (the "New Defendants") to the action: Joy Global Inc. f/k/a Harnischfeger Industries, Inc.; the Plan; the Investment Committee; Kenneth Hiltz, an individual member of the Investment Committee who was not named in the FAC; the Pension Committee; and unnamed Does 1 through 15, identified in the body of the Complaint as "additional Savings Plan Fiduciaries who may be identified during the discovery process of this lawsuit." The first three counts of the SAC are for breach of fiduciary duty and prohibited transactions in violation of ERISA §§ 404(a) and 406(b): Count I is directed at the Investment Committee and its members, Count II against Harnischfeger, the Pension Committee, and the Pension Committee members, and Count III against Fidelity. Count IV is a claim for relief against all defendants for co-fiduciary liability under ERISA § 405 and against Harnischfeger under agency principles.

## II. Harnischfeger Defendants' Motion to Dismiss

### A. Statute of Limitations

■ The New Defendants move to dismiss on the grounds that Kling's allegations are time-barred.

The limitation period for ERISA breach of fiduciary duty claims is governed by 29 U.S.C. § 1113(a), which provides, in pertinent part:

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

(2) *three years after the earliest date on which the plaintiff has actual knowledge of the breach or violation;*

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113(a) (emphasis added). Kling has not alleged fraud, and thus the question whether to apply the three-year or six-year statute of limitations hinges on whether Kling had "actual knowledge of the breach or violation" at some point prior to October 31, 2000 (i.e., more than three years before the New Defendants were added).[3]

There is a circuit split regarding the definition of "actual knowledge" in this context. In the Third and Fifth Circuits, "actual knowledge of the breach or violation requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claims exist, which facts could include necessary opinions of experts, knowledge of a transaction's harmful consequences, or even actual harm." *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1176 (3d Cir.1992). *See also Maher v. Strachan Shipping Co.*, 68 F.3d 951, 954 (5th Cir.1995). Under this approach, which may be termed the "legal claims" approach, it must be established that a plaintiff actually knew not only of the events that occurred but also that those events supported a claim of breach of fidu-

---

**3.** The fiduciary breaches asserted in the SAC are alleged to have occurred between October 31, 1997 and December 31, 1999, within six years of the filing of the SAC. Hence, there is no dispute as to the timeliness of Kling's claims under the six-year statute of limitations.

ciary duty or violation under ERISA. *Richard B. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co.*, 311 F.3d 581, 585 (3d Cir.2002). Other circuits have held that actual knowledge merely requires knowledge of the underlying facts that form the basis for the claim. *See, e.g., Wright v. Heyne*, 349 F.3d 321, 328 (6th Cir.2003); *Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1086 (7th Cir.1992); *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir.1987).

Defendants urge the adoption of the "underlying facts" approach, and argue that Kling had actual knowledge of such facts by April 27, 1998, when Harnischfeger first disclosed the existence of accounting irregularities. Defendants further contend that even under the "legal claims" approach, Kling's complaint is time-barred as to the New Defendants because Kling exhibited actual knowledge of his legal claims in a Proof of Claim that he filed with the Bankruptcy Court and in an affidavit he submitted to the National Labor Relations Board ("NLRB") more than three years prior to the filing of the Second Amended Complaint.

Kling urges the adoption of the "legal claims" approach, and argues that he had no actual knowledge of his legal claims such as to trigger the three-year statute of limitations. He further contends that the claims are timely even under the "underlying facts" approach because his knowledge of the events relating to the financial decline of the company, without additional knowledge about what the defendants did to monitor the prudence of investing in Harnischfeger stock, would not establish that he had actual knowledge of the fiduciary breaches alleged in the Complaint. In this regard he distinguishes his situation from that described in *Martin v. Con-*

*sultants & Administrators, Inc.*, 966 F.2d 1078 (7th Cir.1992), where the plaintiff was the United States Secretary of Labor, who had conducted an extensive investigation prior to bringing suit. Kling emphasizes that he is a machine operator by trade, that he lacks the investigative powers of the Department of Labor ("DOL"), and that he has yet to conduct any discovery regarding the breaches alleged.

**B. *Discussion***

The First Circuit has not ruled on whether a plaintiff must have actual knowledge of the legal claims or merely the facts underlying those claims, and it is not necessary to do so here. Under either approach, defendants have failed to establish Kling's actual knowledge sufficient to trigger the three-year statute of limitations. To establish actual knowledge, "it is not enough that [plaintiffs] had notice that something was awry; [plaintiffs] must have had *specific knowledge of the actual breach of duty* upon which [they sue]." *Brock v. Nellis*, 809 F.2d 753, 755 (11th Cir.1987) (emphasis added). Thus, the events of 1998–99—Harnischfeger's announcement of accounting irregularities, its filing for bankruptcy, and the delisting of its stock—do not establish actual knowledge by Kling of either the underlying facts or the legal claims asserted in this action.

Nor do the bankruptcy and NLRB filings cited by Defendants. Kling's Proof of Claim in the bankruptcy proceeding was filed the day before the Bar Date Order in the bankruptcy action, and nothing in the record contradicts Kling's contention that it was merely a generic attempt to preserve any potential claims that may have existed.[4] It includes no specific facts re-

---

4. The Proof of Claim filed by Kling in the Harnischfeger bankruptcy proceeding was as follows:

garding any of the defendants, let alone the newly added ones, and it states that the relevant Plan documents and other information relating to any potential claims are in the hands of the Debtor (Harnischfeger).

The affidavit that Kling submitted to the NLRB is similarly unhelpful to Defendants. It states that between June 1999 and September 1999, some employees began to engage in speculative buying of Harnischfeger stock; that the stock continued its decline and that many employees, having already lost money, held out hope that the stock would eventually rebound; that on September 20, 1999, Kenneth Hiltz (Chief Financial Officer, Chairman of the Pension and Investment Committee, and one of the New Defendants) faxed a memorandum to the Union stating that the Investment Committee had decided to close the Stock Fund; that the Union questioned Harnischfeger regarding the change and informed Harnischfeger that the Union opposed it; that on December 14, 1999, all employee-held shares of Harnischfeger stock were liquidated; that Kling communicated with a Fidelity representative and was told that Fidelity had liquidated the shares at the direction of the Plan Administrator; and that "the Union is currently investigating potential ERISA claims." (Exh. A to Pl.'s Sur–Reply.)

Mention of a "current investigat[ion]" of potential claims does not constitute evidence that Kling had actual knowledge of either his claims or the facts underlying them. Moreover, Kling's statement in his affidavit that "the Union did not agree with the Employer's decision to liquidate Harnischfeger stock" stands in contrast to his current claims (which charge Plan fiduciaries with waiting *too long* to liquidate the stock) and thus cuts against any inference of actual knowledge of the particular breaches alleged in this action. Furthermore, the newly added defendants, with the exception of Hiltz, are not named fiduciaries under the Plan but rather comprise a "second tier" of defendants to whom Kling seeks to extend ERISA liability under a theory that they had a duty to monitor the actions of the named fiduciaries. Whether they can be held liable for breach of fiduciary duty under ERISA is a complex question of law. (Indeed, as discussed below, Defendants contend that no such claim can be stated against these defendants.) In light of ERISA's functional approach to determining fiduciary status, the novelty of the theory of liability presented by these claims, and the fact that no discovery has yet taken place in this action, it would be particularly unwarranted to conclude at this stage of the litigation that Kling had actual knowledge as to these "second tier" defendants.

### C. *Fiduciary Status*

A slightly different subset of the Har-

This is an unliquidated claim for any indemnification obligation of the Debtors pursuant to the Harnischfeger Industries Savings plan, to their officers, directors, and responsible management personnel, for amounts which are and/or may become due related in any way to the administration of the 401K Plan, as well as any amount which may be due as a result of any fiduciary or other obligations, or breaches thereof related to the administration of the 401K Plan by the Debtors, its officers, agents and/or responsible employees. The Debtor is in possession of the relevant collective bargaining agreement, Plan documents, and other related documents involved in this claim, as well as amounts arising from any fiduciary or other obligations, or breaches thereof, related to such Retiree contributions, by the Debtors, its officers, directors, agents, and/or responsible employees. The Debtor is in possession of the relevant collective bargaining agreements and related documents.

nischfeger Defendants[5] moves to dismiss Counts II and IV on the grounds that they fail to state a claim upon which relief can be granted.

Under ERISA, "a person is a fiduciary to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such a plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Thus, "[f]iduciary status ... is not an 'all or nothing concept .... [A] court must ask whether a person is a fiduciary with respect to the particular activity in question.'" *Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir.1994) (citation omitted). *See also Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 18 (1st Cir.1998).

Defendants do not dispute that the Investment Committee and its members— who are named in Count I of the SAC— were the named fiduciaries of the Plan, with responsibility to make decisions regarding plan investments. Rather, the present motion concerns the "second tier" defendants named in Count II: Harnischfeger, the Pension Committee, and the Pension Committee members. Count II alleges that these defendants breached their fiduciary duty by failing to adequately monitor the Investment Committee and the Trustee (Fidelity), and failing to take actions such as requiring the appointed fiduciaries to obtain independent advice or to close the company stock fund.[6]

Defendants argue that Harnischfeger and its Board of Directors were not fiduciaries with respect to the choice of investments and other matters alleged. Rather, they contend, Harnischfeger and its Board of Directors merely had the power to appoint and remove Investment Committee members and the Trustee, and any fiduciary duty is limited to these acts. *See Crowley v. Corning*, 234 F.Supp.2d 222, 229 (W.D.N.Y.2002) (dismissing board members because the "only power the Board had under the plan was to appoint, retain or remove members of the Committee"); *In re Williams Companies ERISA Litig.*, 271 F.Supp.2d 1328, 1339 (N.D.Okla.2003); *In re WorldCom, Inc.*, 263 F.Supp.2d 745, 760–61 (S.D.N.Y.2003); *Hull v. Policy Management Systems Corp.*, 2001 WL 1836286 at *6–8 (D.S.C.2001); 29 C.F.R. § 2509.75–8, FR–16 (liability of fiduciaries limited to particular fiduciary functions performed). Accordingly, they contend, no claim can be stated against Harnischfeger for failing to take action with regard to the Stock Fund. Nor, they argue, did Harnischfeger have a fiduciary duty to communicate with Plan participants or require the Investment Committee to dis-

---

5. Kenneth Hiltz, a newly named defendant who was a member of the Investment Committee, does not join this portion of the motion to dismiss, as the fiduciary status of the Investment Committee is undisputed.

6. The following are a representative sample of the numerous allegations: "[f]ailing to adequately monitor the performance of the Investment Committee and the Trustee to ensure that [their] performance ... was in compliance with the terms of the Savings Plan and statutory standards" (¶ 110a); "[f]ailing to adequately review the investment policy adopted by the Investment Committee and/or the implementation of such investment policy by the Investment Committee" (¶ 110b) "[f]ailing to cause the Investment Committee to conduct an adequate fiduciary review and obtain independent financial advice to determine whether Company Stock was a prudent investment" (¶ 110c); and "[f]ailing to prevent the Investment Committee and the Trustee from continuing to offer the Company Stock Fund, and permitting the Plan and its participants to acquire, accumulate, and hold Company Stock," (¶ 110d).

close insider information about corporate finances. See *Crowley*, 234 F.Supp.2d at 229; *Hull*, 2001 WL 1836286 at *8–9. They argue that the only incomplete or inaccurate statements alleged to have been made by Defendants (i.e., the misrepresentations in Harnischfeger's financial statements) were made to the market in general and not specifically to Plan participants, and hence are not actionable. *See Stein v. Smith*, 270 F.Supp.2d 157, 173 (D.Mass. 2003); *compare In re Enron Corp. Securities, Derivative, and "ERISA" Litig.*, 284 F.Supp.2d 511, 561 (S.D.Tex.2003) (holding claim to be stated where defendants allegedly made personal appeals to employees to purchase or hold company stock).

Moreover, Defendants contend, providing any information regarding the imprudence of investing in Harnischfeger stock would have constituted insider trading in violation of federal securities laws. *See* 15 U.S.C. §§ 78j(b), 78–*l*(a)(2); 17 C.F.R. § 240.10b–5; Regulation FD (Fair Disclosure), 17 C.F.R. § 243.100(a). Similar claims, they note, have been rejected by other courts in recent 401(k) actions. *See In re McKesson HBOC, Inc. ERISA Litig.*, 2002 WL 31431588, *6–7 (N.D.Cal. 2002), *Hull v. Policy Management*, 2001 WL 1836286, *8–9.

As to the Pension Committee, Defendants argue that it had no discretion with respect to Plan administration or assets, and hence had no fiduciary duty. They cite in support the Pension Committee's Charter (incorporated by reference into the SAC), which charges the Committee with "review[ing] at least annually the investment policy," and "the actions and performance" of the Investment Committee; making recommendations to the Board regarding the membership of the Investment Committee; "report[ing] to the Board of Directors on the activities and findings of the Committee" and "mak[ing] recommen-

dations to the Board based on these findings." Exh. D to Def.'s Mem. Defendants argue that these advisory duties did not constitute discretion over Plan assets or administration sufficient to trigger ERISA fiduciary status, and that any allegations of more extensive powers are merely unsupported, conclusory allegations.

In opposition, Kling notes that all of the Pension Committee members were members of the Harnischfeger Board of Directors, with the power to appoint and remove members of the Investment Committee as well as to select the Trustee. These powers, Kling argues, implicate discretionary authority over the management or administration of a plan and create a fiduciary duty as to those functions. *See Batchelor v. Oak Hill Med. Group*, 870 F.2d 1446, 1449 (9th Cir.1989); *Enron*, 284 F.Supp.2d at 522.

Kling further argues that implicit in the power to appoint and remove fiduciaries is the duty to monitor their investment of plan assets. *See Mehling v. New York Life Ins. Co.*, 163 F.Supp.2d 502, 510 (E.D.Pa.2001); *Liss v. Smith*, 991 F.Supp. 278, 311 (S.D.N.Y.1998); *Enron*, 284 F.Supp.2d at 553; *In re Sears, Roebuck & Co. ERISA Litig.*, 2004 WL 407007, *8 (N.D.Ill. March 3, 2004); *In re CMS Energy ERISA Litig.*, 312 F.Supp.2d 898, 916–17 (E.D.Mich.2004). Accordingly, Kling contends, an appointing fiduciary cannot avoid liability for others' mismanagement by simply doing nothing. *Free v. Briody*, 732 F.2d 1331, 1335–6 (7th Cir. 1984). The very regulations cited by Defendants, Kling notes, state that the ongoing responsibilities of a fiduciary who has appointed other fiduciaries include a duty to review their performance at reasonable intervals "to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29

C.F.R. § 2509.75–8, FR–17. Kling distinguishes this case from *Crowley, Hull,* and *WorldCom,* where there were no allegations that the defendants failed to monitor their appointees adequately. Kling notes that in *Enron,* where the plaintiffs alleged failure to monitor, the court distinguished *WorldCom* on this basis, and held that the exercised power to appoint and remove fiduciaries triggers a duty to monitor the appointees. *Enron,* 284 F.Supp.2d at 553 n. 59. Kling acknowledges that *Williams* supports dismissal, but argues that the decision should not be taken as persuasive authority for two reasons: first, the court in *Williams* was wrong to rely on *Crowley* and *Hull,* because in those cases (as in *WorldCom* ) the plaintiffs failed to allege failure to monitor, and second, the court's reliance on DOL regulations was also misplaced, as evidenced by the fact that the Secretary of Labor has sharply criticized the *Williams* decision, stating in an amicus brief submitted in the *WorldCom* case that *Williams* "misapprehended the Secretary's position," "is contrary to the weight of precedent," and "is simply wrong and should be accorded no weight." (DOL Amicus Brief, Exh. 14 to Pl.'s Opp., at 4.)

Kling argues that the SAC adequately pleads the fiduciary status of the Pension Committee members. First, he notes, the SAC alleges that individually-named defendants were fiduciaries not just because of their membership in the Pension Committee but also because of their membership on Harnischfeger's Board of Directors, which was vested with the power to appoint and remove members of the Investment Committee. As to the Pension Committee itself, Kling contends that the exact scope of its duties is a factual matter

not suitable for determination on a motion to dismiss.

As to Harnishfeger's liability for investment in company stock, Kling concedes that plan sponsors do not act as fiduciaries when they design, adopt, amend, or terminate ERISA plans,[7] but argues that his claims are not premised on a breach in plan design. Rather, he maintains, his claim is that Harnischfeger failed to monitor the named fiduciaries or to take any action to correct their imprudent investments. Any such corrective action would not have implicated the design of the Plan, Kling contends, because Plan documents required only that the Stock Fund be invested "primarily" in Harnischfeger stock, rather than exclusively so, and nothing in the Plan required that the Stock Fund be offered to Plan participants. In arguing that such corrective measures would have been fiduciary rather than plan sponsor activity, Kling relies on *Stein v. Smith,* 270 F.Supp.2d 157 (D.Mass.2003), in which the court distinguished settlor functions from discretionary fiduciary functions. While the court observed that the initial decisions by the plan sponsor to set up a 401(k) plan with employer stock investments were settlor functions, it held that a claim was stated against directors where the complaint alleged that they had been delegated the responsibility to "review the allocation and diversification of [401(k) ] Plan assets and take appropriate action to insure adherence with investment guidelines for such Plan," as well as "to review the performance of the 401(k) 'trustees, investment managers and other fiduciaries.'" *Id.* at 171.

As to liability for failing to communicate negative information about the company's finances, Kling argues that the duty of

---

7. Kling notes in his opposition brief that he is voluntarily dismissing claims brought against the Harnischfeger Defendants for prohibited transactions under ERISA § 406, 29 U.S.C. § 1106.

loyalty includes a duty to inform participants of serious threats to Plan assets. In *Varity v. Howe,* Kling notes, the Supreme Court held that fiduciaries are bound by more than just the specific disclosure provisions of ERISA and plan documents. 516 U.S. 489, 504, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). The common law of trusts, Kling argues, has long recognized the affirmative duty of a fiduciary to disclose material information to the trust beneficiary. *See Watson v. Deaconess Waltham Hosp.,* 298 F.3d 102, 114–15 (1st Cir.2002); *Estate of Becker v. Eastman Kodak Co.,* 120 F.3d 5, 8–10 (2d Cir.1997). Kling argues that Defendants' reliance on *Stein v. Smith* is misplaced: in *Stein,* the court held that statements made in SEC filings and press releases were not made in a fiduciary capacity, but did not dismiss the claim, stating that "several circuits— including the First Circuit—'have held that, in certain circumstances, a fiduciary has an obligation to accurately convey material information to beneficiaries, including material information that the beneficiary did not request." *Stein,* 270 F.Supp.2d at 174 (citation omitted).

Finally, Kling argues that securities laws do not prohibit ERISA fiduciaries from protecting plan participants from dangerous investments. Kling insists that he does not allege a duty to use nonpublic information solely for the benefit of participants, but rather that Defendants' failure to protect participants from an imprudent investment violated their disclosure duties under the securities laws *and* ERISA. "[There is nothing] that requires ERISA fiduciaries to convey non-public material information to Plan participants. What is required, is that any information that is conveyed to participants be conveyed in compliance with the standard of care that applies to ERISA fiduciaries." *WorldCom,* 263 F.Supp.2d at 767. It would have been consistent with the securities laws, Kling contends, for the fiduciaries to have eliminated the Stock Fund as a participant option. *See* DOL Amicus Br. in *Enron,* Exh. 12 to Def.'s Opp., at 27 (*citing Condus v. Howard Sav. Bank,* 781 F.Supp. 1052, 1056 (D.N.J.1992)). Kling notes that in rejecting a defense identical to that put forth by Defendants, the court in *Enron* held that "the statutes should be construed to require, as they do, disclosure by Enron officials and plan fiduciaries of Enron's concealed, material financial status to the investing public generally, including plan participants, whether 'impractical' or not, because continued silence and deceit would only encourage the alleged fraud and increase the extent of injury." *Enron,* 284 F.Supp.2d at 565.

### D. *Discussion*

 Under the Plan documents, Harnischfeger and its Board of Directors [8] appointed the Plan Administrator and the Trustee. (SAC, ¶ 30.) The power to appoint fiduciaries is itself a fiduciary function. *See Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1465 (4th Cir.1996). Implicit in this power is the duty to monitor. *See Leigh v. Engle,* 727 F.2d 113, 134–35 (7th Cir.1984); 29 C.F.R. § 2509.75–8, FR–17. "The duty to monitor carries with it … the duty to take action upon discovery that the appointed fiduciaries are not performing properly." *Liss v. Smith,* 991 F.Supp. 278, 311 (S.D.N.Y.1998).[9] Thus, Kling's

---

**8.** The individually named members of the Pension Committee were all members of the Board of Directors, and it is in the latter capacity that they held responsibility for appointing the Plan Administrator and the Trustee.

**9.** *Williams* stands alone in holding that no fiduciary liability may arise under the circum-

argument is persuasive as to the core allegations against Harnischfeger and the individual members of the Pension Committee for failure to monitor and failure to remove the named fiduciaries. (SAC, ¶¶ 110a, 110b, 110j, 110n).

Accordingly, Harnischfeger and the individually-named members of the Pension Committee are properly named defendants in this action and the motion to dismiss Count II is DENIED as to Kling's allegations of their failure to remove and failure to monitor adequately the appointed fiduciaries.

■ Kling is on more tenuous ground with regard to his argument that these "second tier" defendants may be held liable for acts or omissions that fell within the duties of the Plan Administrator, such

as failure to provide accurate information about investments and failure to close the Stock Fund. "Fiduciary status ... is not an 'all or nothing concept .... [A] court must ask whether a person is a fiduciary with respect to the particular activity in question.'" *Maniace v. Commerce Bank of Kansas City, N.A.*, 40 F.3d 264, 267 (8th Cir.1994) (citation omitted). *See also Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12, 18 (1st Cir.1998). Therefore, the alleged failure of these defendants to perform acts falling outside of their own fiduciary responsibilities cannot give rise to liability under ERISA §§ 404(a) and 406(b). However, such allegations may be actionable as breach of co-fiduciary duty under ERISA § 405(a) and thus are properly before the Court under Count IV.[10]

---

stances alleged here; it is of questionable weight, however, in light of the Secretary of Labor's subsequent criticism of its interpretation of DOL regulations and the numerous cases that have come to the opposite conclusion. *See, e.g., Enron*, 284 F.Supp.2d at 553; *In re Sears, Roebuck & Co. ERISA Litig.*, 2004 WL 407007, *8 (N.D.Ill. March 3, 2004); *In re CMS Energy ERISA Litig.*, 312 F.Supp.2d 898, 916–17 (E.D.Mich.2004).

10. The Investment Committee and its members, who were responsible under the terms of the Plan for disclosing information to participants, are not party to the present motion. It is therefore premature to rule here on whether a fiduciary's failure to disclose information may constitute a breach of fiduciary duty under ERISA, a question that the Supreme Court reserved in *Varity Corp. v. Howe*. *See Varity Corp.*, 516 U.S. 489, 506, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) ("[W]e need not reach the question whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative, or in response to employee inquiries."). However, it may be noted that, drawing on the common law of trusts, "[m]any ... circuits have held that, in certain circumstances, a fiduciary has an obligation to accurately convey material information to beneficiaries, including material information that the beneficiary did not specifically request." *Watson v. Deaconess Waltham Hospital*, 298 F.3d 102,

114 (1st Cir.2002) (citations omitted). The First Circuit, relying on this emerging line of cases, has held that an affirmative duty may arise when "there [is] some particular reason that the fiduciary should have known that his failure to convey the information would have been harmful," and when such information relates to the plan generally rather than to the circumstances of a particular participant. *Id.* at 115.

As to Defendants' argument that any such disclosure would have constituted a violation of securities laws, it may be noted that the cases relied upon by Defendants—*McKesson*, 2002 WL 31431588, *6–7 and *Hull*, 2001 WL 1836286, *8–9—have been sharply criticized. *See Enron*, 284 F.Supp.2d at 564–566. Furthermore, the Department of Labor has commented:

Defendants' duty to "disclose or abstain" under the securities laws does not immunize them from a claim that they failed in their conduct as ERISA fiduciaries. To the contrary, while their Securities Act and ERISA duties may conflict in some respects, they are congruent in others, and there are certain steps that could have been taken that would have satisfied both duties to the benefit of the plans. First and foremost, nothing in the securities laws would have prohibited them from disclosing the information to other

Moreover, Count II fails entirely as to the Pension Committee. The SAC alleges that the Harnischfeger Board of Directors delegated much of its fiduciary duty to the Pension Committee. However, the Pension Committee's Charter, incorporated by reference into the SAC, describes it as an advisory body charged with making recommendations to the Board. Although determination of fiduciary status under ERISA is a functional matter, the SAC fails to include factually sufficient allegations from which to infer that the Pension Committee itself, rather than Harnischfeger and/or its Board of Directors, held the actual power to appoint the Plan Administrator or Trustee.

Accordingly, the motion is GRANTED as to the Pension Committee, and the Complaint is dismissed as to the Pension Committee.

### E. *Co–Fiduciary Liability*

■ Pursuant to ERISA § 405(a), a fiduciary can be held liable for "co-fiduciary" breach if the fiduciary: (1) "participates knowingly in, or knowingly undertakes to conceal" another's fiduciary breach, "knowing such act or omission is a breach" of fiduciary duty; (2) enables another to commit a fiduciary breach by breaching his or her own fiduciary duties under ERISA; or (3) knows of another's fiduciary breach and "fails to make reasonable efforts under the circumstances to remedy the breach." § 405(a), 29 U.S.C. § 1105(a).

Defendants repeat their argument here that the "second tier" defendants were not fiduciaries, and hence cannot be found liable for breach of co-fiduciary duty. Moreover, they argue, co-fiduciary liability under the "enabling" element of the standard

is limited to instances in which the co-fiduciary "enables" the underlying alleged breach of fiduciary duty by a breach of the co-fiduciary's specified obligations. *See* ERISA § 405(a)(2), 29 U.S.C. § 1105(a)(2).

Kling, in turn, repeats his argument that these defendants *were* fiduciaries. As for liability under the "enabling" element of the standard, Kling argues that the Defendants' breach of their fiduciary duty in connection with appointment and removal of the other fiduciaries is what enabled the appointed fiduciaries to breach their own fiduciary duties.

### F. *Discussion*

It has already been concluded that Harnischfeger and the members of the Pension Committee were fiduciaries with respect to the appointment, removal, and monitoring of the Plan Administrator and the Trustee. The SAC alleges that these defendants failed to remedy breaches of the co-fiduciaries "with knowledge of such breaches" (Compl.¶ 127), and that their failure to adequately monitor the appointed fiduciaries enabled those fiduciaries to breach their duties. (*Id.*) Hence, Kling has adequately pleaded breach of co-fiduciary duty against these defendants. *See CMS*, 312 F.Supp.2d at 916–17 (where a primary failure to monitor claim is properly pleaded, claims for co-fiduciary duty will survive a motion to dismiss); *Enron*, 284 F.Supp.2d at 661–62 (claim had been stated for co-fiduciary breach where the allegations asserted that the fiduciaries who appointed members of the Enron Administrative Committee failed "to inform the Administrative Committees about Enron's actual financial status and/or failed to monitor their appointees and to supervise the Administrative Committees of the plans regarding the prudence of their decision to

---

shareholders and the public at large, or from forcing [the company] to do so.

*Id.* at 566 (quoting DOL amicus brief).

invest assets of the Plan and the ESOP in Enron Stock"). *See also Jackson v. Truck Drivers' Union Local 42 Health and Welfare Fund,* 933 F.Supp. 1124, 1141–42 (D.Mass.1996).

Accordingly, the motion is DENIED as to Count IV insofar as it alleges co-fiduciary breach against Harnischfeger and the members of the Pension Committee.

Kling has failed to plead fiduciary status on the part of the Pension Committee, however, and thus cannot plead co-fiduciary breach against it. *See Maniace v. Commerce Bank of Kansas City, N.A.,* 40 F.3d 264, 268 (8th Cir.1994). Accordingly, the motion is GRANTED as to the Pension Committee.

### G. *Agency Principles*

██ In addition to alleging co-fiduciary liability, Count IV alleges that:

> Harnischfeger is further liable for the breaches of duty by the Pension Committee, the Pension Committee Members, the Investment Committee, and the Investment Committee Members under the laws of agency, including the principles of vicarious liability and respondeat superior; and Harnischfeger is liable as indeminitor of these defendants pursuant to applicable corporate law and under the terms of Harnischfeger's articles of incorporation, by-laws and other Harnischfeger documents of corporate governance, for the losses caused by these defendants.

(Compl., ¶ 130.)

Defendants argue that application of respondeat superior and vicarious liability in ERISA fiduciary duty cases has been rejected as inconsistent with ERISA's functional concept of ·fiduciary responsibility, relying on *Crowley v. Corning,* 234 F.Supp.2d 222, 228–29 (W.D.N.Y.2002), *Crocco v. Xerox Corp.,* 137 F.3d 105, 107 (2d Cir.1998), and *In re Williams Companies ERISA Litig.,* 271 F.Supp.2d 1328, 1338 (N.D.Ok.2003).

In opposition, Kling cites *Meyer v. Holley,* in which the Supreme Court held that respondeat superior liability may be inferred under a federal statute in the absence of an express contrary intent. *Meyer v. Holley,* 537 U.S. 280, 123 S.Ct. 824, 828, 154 L.Ed.2d 753 (2003). A number of courts, Kling notes, have recognized that respondeat superior applies in actions brought under ERISA. *See, e.g., National Football Scouting Inc. v. Cont'l Assurance Co.,* 931 F.2d 646 (10th Cir.1991); *Am. Fed'n of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.,* 841 F.2d 658, 665 (5th Cir. 1988).

In a Reply brief, Defendants contend that ERISA does indeed express contrary intent regarding ˙respondeat superior by imposing fiduciary liability only to the extent the person has discretion or control with respect to the particular matter in dispute. *See* 29 U.S.C. § 1002(21)(A) (defining fiduciaries); 29 C.F.R. § 2509.75–8, FR–13. They argue that respondeat superior cannot be reconciled with the "two hats" doctrine that permeates ERISA. *See Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995) (recognizing that an employer may function in a dual capacity as a business employer who is not regulated by ERISA, and as a fiduciary of its ERISA plan). In *Great–West Life & Annuity Ins. Co. v. Knudson,* Defendants note, the Supreme Court observed that it has been "especially reluctant" to tamper with ERISA by "extending remedies not specifically authorized by its text" because "Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." 534 U.S. 204, 209, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002).

## H. *Discussion*

Defendants do not appear to seek dismissal of Kling's allegation that Harnischfeger is liable as an indemnitor, and in any case this is a factual matter not suitable for resolution on a motion to dismiss. Thus, the motion is considered only as to Count IV's allegation of liability under agency principles.

"[W]hen Congress creates a tort action, it legislates against a background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules." *Meyer v. Holley,* 537 U.S. 280, 123 S.Ct. 824, 828, 154 L.Ed.2d 753 (2003). As Defendants correctly note, ERISA imposes a functional definition of fiduciary status and limits cofiduciary liability to certain defined circumstances. Furthermore, under the "two hats" doctrine, courts have held that certain actions of an employer (for example, establishing or amending a plan) fall outside the scope of ERISA fiduciary duty. *See Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). However, Defendants have failed to cite a single authority that evinces an intent within ERISA to eliminate the vicarious liability of a corporation for the acts of its employees or agents. Although the Supreme Court in *Great–West Life* expressed its hesitance to recognize "other remed[ies]" not specifically authorized by ERISA, it did so in the context of petitioners' attempt to assert what the Court deemed to be an entirely new cause of action:

> Respecting Congress's choice to limit the relief available under § 502(a)(3) to "equitable relief" requires us to recognize the difference between legal and equitable forms of restitution. Because petitioners seek only the former, their suit is not authorized by § 502(a)(3).

534 U.S. at 209, 122 S.Ct. 708 (footnote omitted).

A number of courts have recognized respondeat superior in the ERISA context. *See, e.g. Hamilton v. Carell,* 243 F.3d 992, 1000 (6th Cir.2001) (recognizing that respondeat superior can be applied in ERISA context where employee breaches fiduciary duties while acting in the scope of employment); *Nat'l Football Scouting Inc. v. Cont'l Assurance Co.,* 931 F.2d 646 (10th Cir.1991) (same); *McMahon v. McDowell,* 794 F.2d 100, 109 (3d Cir.1986) (stating that employer could be liable if employees were found to have breached their duties); *Stuart Park Assoc. Ltd. P'ship v. Ameritech Pension Trust,* 846 F.Supp. 701 (N.D.Ill.1994)("It is well-established that an employee's actions within the scope of employment are imputed to the employer, even in the context of ERISA litigation"); *Stanton v. Shearson Lehman/American Express, Inc.,* 631 F.Supp. 100, 104 (N.D.Ga.1986) (commenting that "the broad protective purpose of ERISA calls for such liability"). *See also Am. Fed'n of Unions v. Equitable Life Assur. Soc.,* 841 F.2d 658, 665 (5th Cir. 1988) (employer can be liable if "actively and knowingly participating" in the employee's breach of fiduciary duty); *Kral, Inc. v. Southwestern Life Ins. Co.,* 999 F.2d 101, 103 (same). In contrast, the cases cited by Defendants carry little weight. *Williams,* 271 F.Supp.2d 1328, did not specifically address the question of respondeat superior liability. *Crowley* rejected respondeat superior liability without explanation in a single sentence; in doing so, it cited *Bannistor v. Ullman,* 287 F.3d 394, 408 (5th Cir.2002), a case that itself found respondeat superior liability for ERISA fiduciary breach, albeit under the stricter definition of such liability adopted by the Fifth Circuit. *Crowley,* 234 F.Supp.2d at 228. As for *Crocco,* its holding concerns a claim for benefits rather

than for breach of fiduciary duty. 137 F.3d at 107.

I therefore conclude that a claim may be stated under ERISA for respondeat superior liability. If Kling is able to prove at trial the required elements of vicarious liability under relevant state law,[11] he may establish liability on the part of Harnischfeger under agency principles. Accordingly, the motion is DENIED as to Count IV.

### III. The Plan as Defendant

■ Kling brings this action "personally and in a representative capacity for the Joy Global Retirement Savings Plan f/k/a the Harnischfeger Industries Savings Plan."[12] In the Second Amended Complaint, Kling also names the Plan "as a nominal defendant in order to facilitate the requested relief, which would flow to the Savings Plan to be allocated to the accounts of Savings Plan participants whose accounts suffered losses...." (Compl., ¶ 11).

Defendants move to dismiss the Complaint as to the Plan, on the grounds that 1) the Plan cannot be both plaintiff and defendant in the same action, and 2) the Plan is not a fiduciary, and thus cannot be sued for breach of fiduciary duty.

Kling does not contend that the Plan is a fiduciary and alleges no wrongdoing on the part of the Plan. Rather, he argues that the Plan may be named as a nominal defendant solely for the purposes of assuring that relief can be granted. He cites in support *Acosta v. Pacific Enterprises,* in which the Ninth Circuit held:

> A Plan covered by ERISA cannot, as an entity, act as a fiduciary with respect to its own assets. Therefore, a Plan cannot be sued for breach of fiduciary duty. This rule, however, does not inexorably lead to the conclusion that a plan cannot be properly named in a suit alleging breach of fiduciary duty. To the extent that a plaintiff seeks "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," the plan may be named as a defendant. 29 U.S.C. §§ 1132(a)(1)(B), 1132(d) (1988). *Thus, even though Acosta cannot sue the SoCal Gas Plan for breach of fiduciary duty per se, he may, as he has done here, join the Plan in his action for breach of fiduciary duty in order that he may obtain the relief sought.*

*Acosta,* 950 F.2d 611, 618 (9th Cir.1991).

Kling's argument is unpersuasive. In *Acosta,* the plaintiff brought suit under 29 U.S.C. § 1132(a)(1)(B), which allows a participant to sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Kling, in contrast, sues under 29 U.S.C. § 1132(a)(2), which allows a participant to seek relief under 29 U.S.C. § 1104 and thus impli-

---

11. *See Konradi v. United States,* 919 F.2d 1207, 1208–09 (7th Cir.1990) (recognizing that, in applying respondeat superior liability under the Federal Tort Claims Act, whether accident at issue took place within scope of employment was a matter of state law). The parties in the present case have not expressed any views as to which state's laws would govern the matters at issue here, and I reach no conclusion on that question.

12. As noted in the Memorandum and Order of June 3, 2003, Kling must bring this action as a representative of the Plan in order to meet the requirements of ERISA § 409, 29 U.S.C. § 1109. *See Massachusetts Mutual Life Insurance Company v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) ("[T]he entire text of § 409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself.").

cates the requirement under § 1104 that relief must be sought on behalf of the plan itself. *See Massachusetts Mutual Life Insurance Company v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) ("[T]he entire text of § 409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself."). Thus the plan at issue in *Acosta* was named only as a defendant, whereas the Harnischfeger plan is (at least nominally) suing itself. At least one court has rejected the naming of a plan as nominal defendant under the circumstances presented here. *See Wilson v. United States International Investigative Services,* 2002 WL 32116850 (E.D.Penn.2002), 2002 U.S. Dist. LEXIS 22259 (granting summary judgment to defendant plan where plan was both plaintiff and nominal defendant).

The Plan cannot be both plaintiff and defendant in this action, and Kling has failed to demonstrate that he will be prejudiced by the dismissal of the Plan as a defendant.

Accordingly, the Motion to Dismiss is GRANTED as to the Plan. The Plan is no longer a defendant, nominal or otherwise, in this action.

### IV. *Kling's Motion to Disqualify*

Kling moves to disqualify McDermott, Will & Emery from representing the Plan while simultaneously representing the Plan's fiduciaries alleged to have breached fiduciary duties to the Plan.

In light of the decision above to dismiss the Plan as a defendant in this action, the motion is DENIED AS MOOT.

### V. *Fidelity's Motion to Dismiss*

■ Whereas the First Amended Complaint alleged various breaches of fiduciary duty against a largely undifferentiated group of "Defendants," the Second Amended Complaint includes a count (Count III) directed solely at Fidelity. The breaches of fiduciary duty alleged in Count III are: (1) following improper directions to offer the Company Stock Fund as an investment alternative; (2) following improper directions to invest the Company Stock Fund exclusively in Company Stock; (3) accepting contributions to the Plan in the form of Company Stock when it knew Company stock was no longer a prudent investment; (4) failing to assert legal claims or otherwise take acts necessary to carry out the purpose of the Trust; and (5) failing to disclose material information to Plan fiduciaries and participants regarding the imprudence of investing in Company Stock. (Compl.¶ 120.) Count VI, as noted above, alleges breach of co-fiduciary duty against all defendants, including Fidelity.

Section 403(a) of ERISA, 29 U.S.C. § 1103(a), permits a plan to provide that a trustee holding trust assets be "subject to the direction of a named fiduciary who is not a trustee, in which case, the trustee shall be subject to proper direction of such fiduciary which are made in accordance with the terms of the plan and which are not contrary to [ERISA]." In denying Fidelity's motion to dismiss the First Amended Complaint, I concluded as follows:

> The Plan documents and Trust Agreement at issue here, in no uncertain terms, designate Fidelity as a directed trustee, and thus exempt Fidelity from fiduciary status. However, this proposition is not sufficient to justify dismissing the complaint. Fidelity may still be found liable if a jury determines that Fidelity followed directions that were contrary to the Plan or to ERISA.

> \* \* \* \* \* \*

Because Kling has alleged facts which, if proven, could lead a reasonable jury to conclude that Fidelity had followed di-

rections that it knew to be contrary to the Plan or to ERISA, the motion to dismiss is DENIED.

Memorandum and Order of June 3 ("June 3 Order"), at 270 F.Supp.2d 121, 131.

Following this ruling, Kling moved for reconsideration and clarification regarding Fidelity's fiduciary status. In declining to reconsider the conclusion that Fidelity was not a fiduciary with regard to the acts alleged in the FAC, I observed:

> "[D]iscretion is the sine qua non of fiduciary duty," *Cottrill v. Sparrow, Johnson & Ursillo,* 74 F.3d 20, 22 (1st Cir. 1996), and the First Circuit has held that it is permissible for a district court to base its inquiry into the existence of such discretion on the relevant contractual agreements. *Beddall v. State Street Bank and Trust Co.,* 137 F.3d 12, 19 (1st Cir.1998) ("The starting point for reasoned analysis of the Bank's fiduciary status is the Agreement."). In any case, the very limited discretion that Kling attributes to Fidelity would not give rise to fiduciary duty with regard to the acts that Kling alleges. *See Beddall,* 137 F.3d at 18 (fiduciary duty attaches in increments, and is not an all-or-nothing proposition).

Memorandum and Order of October 24, 2004 ("October 24 Order") 291 F.Supp.2d 1 (Footnote omitted.) I also commented that the conclusion reached in the June 3 Order was not in tension with the conclusion reached in the *WorldCom* decision, in which the Court held that "[a]s a directed trustee, Merrill Lynch was not required to exercise its independent judgment in deciding how and whether to invest employee funds as directed. It only had to make sure that WorldCom's directions were proper, in accordance with the terms of the plan, and not contrary to ERISA." *In re WorldCom, Inc.,* 263 F.Supp.2d 745, 762

(S.D.N.Y.2003) (internal quotations and citations omitted).

Fidelity now argues that all claims against it should be dismissed because, despite the June 3 and October 24 Orders delineating the very limited grounds on which liability may attach to Fidelity, Kling is still bringing claims against Fidelity for breach of fiduciary and co-fiduciary duty.

In opposition, Kling argues that Fidelity's motion is merely an attempt to reargue the issues disposed of in the prior rulings, and should therefore be denied.

In the time since this Court last considered the question of directed trustee liability under ERISA, the issue has come before the First Circuit, which elected not to determine what standard of duty is applicable to a directed trustee, instead ruling that the complaint at issue lacked factual allegations sufficient to state a claim under any standard. *See Lalonde v. Textron,* 369 F.3d 1 (1st Cir.2004). Several district courts have also confronted directed trustee liability in recent months, and a long and thoughtful treatment of the question has issued in the *Enron* litigation. *See In re Enron Corp. Securities, Derivative, and "ERISA" Litig.,* 284 F.Supp.2d 511, 581–602 (S.D.Tex.2003).

In *Enron,* the court closed its comprehensive analysis of ERISA's legislative history as follows:

> After extensive research, this Court concludes … that even where the named fiduciary appears to have been granted full control, authority and/or discretion over that portion of activity of plan management and/or plan assets at issue in a suit and the plan trustee is directed to perform certain actions within that area, the directed trustee still retains a degree of discretion, authority, and responsibility that may expose him to liability, as reflected in the structure and lan-

guage of provisions of ERISA. At least some fiduciary status and duties of a directed trustee are preserved, even though the scope of its "exclusive authority and discretion to manage and control the assets of the plan" has been substantially constricted by the directing named fiduciary's correspondingly broadened role, and breach of those duties may result in liability.

In any ERISA retirement plan, where the plaintiffs ... allege with factual support that the directed trustee knew or should have known from a number of significant waving red flags and/or regular reviews of the company's financial statements that the employer company was in financial danger and its stock greatly diminished in value, yet the fiduciary, to which the plan allocated all control over investments by the plan, directed the trustee to continue purchasing the employer's stock, *there is factual question whether the evidence is sufficient to give rise to a fiduciary duty by the directed trustee to investigate the advisability of purchasing the company stock to insure that the action is in compliance with ERISA as well as the plan.*

*Enron,* 284 F.Supp.2d at 601. Of particular relevance to the present motion is this comment:

ERISA's expansive definition of fiduciary, its enhancement of the fiduciary's duty incorporated from trust law, and the statute's purpose and policy of heightened protection of plan assets and plan participants and beneficiaries, together, *support the Court's conclusion that § 403(a) should be read to maintain some, rather than virtually eliminate, fiduciary obligations of a directed trustee to question and investigate where he has some reason to know the directions he has been given may conflict with the plan and/or the statute.*

*Id.* at 587.

With *Enron*'s analysis in mind, I reaffirm the conclusion in the June 4 and October 24 Orders that Fidelity can be found liable if Kling is able to prove at trial that Fidelity followed orders contrary to ERISA or the Plan. Further, I clarify that, although Fidelity may not have exercised discretion over Plan assets sufficient to convey fiduciary status *as to the investment of those assets,* Fidelity's duty to distinguish between proper and improper instructions *was itself a fiduciary duty.*

In this light, all but one of the five allegations of breach of fiduciary duty included in the Second Amended Complaint state a claim against Fidelity. The first, second, and third allegations are that Fidelity followed improper instructions from the named fiduciary; as already noted, Kling may bring such a claim against a directed trustee. The fourth allegation, that Fidelity failed to assert legal claims on behalf of the Plan, concerns a matter over which the Plan granted Fidelity discretion.[13] However, the fifth allegation— that Fidelity failed to disclose material

---

**13.** The October 24 Order took note of the fact that the Plan granted Fidelity discretion over a limited set of matters, including bringing legal claims on behalf of the Plan, but concluded that this discretion was not sufficient to convey fiduciary status with respect to the investment of Plan assets. *See* October 24 Order 291 F.Supp.2d at 3, n. 1. Here, where Kling specifically alleges breach of fiduciary duty with regard to bringing legal claims, fiduciary status has been properly pleaded. *See* 29 U.S.C. § 1002(21)(A): "a person is a fiduciary to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such a plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

information to Plan fiduciaries or participants—fails, as the facts alleged in the Second Amended Complaint are insufficient to conclude that Fidelity had any fiduciary duty to provide such information.[14]

Having stated a claim for breach of fiduciary duty against Fidelity, Kling may also state a claim (as he does under Count IV) for breach of co-fiduciary duty.

Accordingly, Fidelity's motion is DENIED.

In summary, the motions to dismiss are GRANTED as to all claims against the Pension Committee and the Plan, and otherwise DENIED. Kling's Motion to Disqualify is DENIED AS MOOT.

It is so ordered.

---

14. As noted above in connection with the "second tier" Harnischfeger defendants, however, even if Fidelity lacked a duty to disclose information it could conceivably be liable, under certain circumstances, for breach of co-fiduciary duty in connection with the failure of the named fiduciary to disclose such information.